NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNA RODRIGUEZ,<br><br>    Claimant,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No.: 2:14-cv-02432-(CCC)<br><br>OPINION |

**CECCHI, District Judge.**

I. **INTRODUCTION**

Anna Rodriguez ("Claimant") seeks review of the final determination by the Commissioner of the Social Security Administration ("Commissioner") denying Claimant disability benefits under the Social Security Act. The issue to be decided is whether the Commissioner's denial of Claimant's application for disability insurance benefits is supported by substantial evidence. This motion has been decided without oral argument pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, this Court concludes that the decision of the Administrative Law Judge ("ALJ") is affirmed in part, vacated in part, and remanded for further consideration consistent with this opinion.

II. **FACTS AND PROCEDURAL HISTORY**

Claimant was born on December 6, 1963 in Puerto Rico (R: 35, 147).[2] She attended high

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

[2] "R" refers to the certified record of the administrative proceedings.

school in the United States until her junior year, and she reads and understands English (R: 35).

On August 5, 2010, Claimant applied for disability benefits under Title II, alleging disability that began in December 2004 (R: 10, 147), and for supplemental security income ("SSI") under Title XVI, alleging disability that began in July 2009 (R: 151). Claimant listed her disabilities as rheumatoid arthritis, back pain, knee pain, and neck pain (R: 186). On her applications, Claimant reported that "I can't sit very long maybe 5 minutes [because] my back hurts at all times[.]" (R: 165). Claimant also reported that she last worked in September (R: 186) or March of 2006 (R: 174), at which time she was laid off due to her condition making her late to work (R: 186).

The record reveals that Claimant had several emergency room ("ER") admissions between 2009 and 2011. In June 2009, she was admitted to the ER, with complaints of back pain associated with heavy menstrual bleeding (R: 259). While there, Claimant denied any other musculoskeletal aches and pains, stating that she "just wanted pain medication" (R: 259). In September 2010, she was seen in the ER, with complaints of left-sided pain radiating from her neck to her lower left extremity (R: 269, 272, 276). A left knee x-ray revealed tri-compartment arthrosis with moderate to severe medial compartment changes (R: 280). Claimant was diagnosed with arthritis (R: 272-272, 276). During a January 2011 admission for back pain, a physical evaluation noted "normal strength in extension of the knees" and imaging showed a normal lumbar spine with "[n]o degenerative changes" noted (R: 326). Last, during ER admissions in the spring of 2012 for bilateral lower back pain, a CT scan revealed bilateral enlarged ovarian cysts (R: 345). A pelvic ultrasound revealed several uterine fibroids (R: 347).

A state agency physician, Dr. Toros Shahinian, examined Claimant in September 2010 (R:

291). While in Dr. Shahinian's office, Claimant "cried repeatedly and said she was in pain due to the cold condition in the office" and "she was hunched over in pain." (R: 291). Dr. Shahinian's primary diagnosis was degenerative joint disease in the left knee, and he ultimately determined that Claimant could stand 4 hours in an 8-hour day and sit 6 hours in an 8-hour day (R: 291-292).

Claimant was evaluated by a psychologist, Dr. Gerard Figurelli, in October 2010, who diagnosed her with Depression and Adjustment Disorder with Anxious Mood (R: 300). Dr. Figurelli assessed that Claimant had mild restriction of daily living activities and maintaining social functioning, but moderate difficulties in maintaining concertation, persistence, and/or pace (R: 312). In October 2010, Dr. S. Bortner, a state agency psychological consultant, reviewed the medical record and Dr. Figurrelli's report and assessed Claimant as capable of understanding and executing simple instructions, making work related decisions, interacting with others and adapting to workplace changes (R: 318).

In 2011, Dr. Mohammad Rizwan, a state agency physician, reviewed the physical and mental residual functional capacity assessments by Drs. Shahinian, Figurelli, and Bortner, and he affirmed their determinations (R: 331). He also noted that despite Claimant's allegation of worsening work related functioning, her more recent ER visits showed normal strength and extension in her knees and an unremarkable lumbar spine (R: 329).

Claimant was also seen by an examining physician, Dr. Hilary B. Kern, in October 2012 (R: 356). Claimant presented with a cane, reporting to Dr. Kern that the cane had been prescribed by a doctor (R: 356). She also reported use of a self-prescribed wheelchair when outside (R: 357). Dr. Kern's examination revealed decreased range of motion in both knees with "[e]nhanced pain behavior throughout all evaluation of bilateral knees." (R: 357). Claimant was "tearful prior to

3

beginning the examination." (R: 356). Dr. Kern's report states, "It is difficult to assess her function including per my medical assessment form due to enhanced pain behavior." (R: 358). Dr. Kern noted the absence of diagnostic imaging on both knees, stating objective testing of Claimant's bilateral knees is "very important" (R: 358). Ultimately, Dr. Kern concluded that, in an 8-hour work day, Claimant could sit 5 hours, stand 2 hours, and walk 1 hour (R: 362).

Both Claimant's disability and SSI applications were denied initially and also upon reconsideration (R: 10). Claimant subsequently requested a hearing, and she appeared and testified on June 19, 2012 before Judge Richard West (R: 35-69). During the opening statement, Claimant's attorney began by explaining that her "biggest problem is that she's married and [she is not eligible for Medicaid because] her husband is on disability insurance benefits and makes $1,200 a month. That's her biggest problem." (R: 30).

The ALJ noted credibility problems regarding Claimant's sporadic prior work history before the alleged onset of her disability and her statements about the intensity and persistence of her symptoms which conflicted with medical evidence (R: 14, 15). For example, Claimant testified that she stopped working after Christmas of 2004, because her legs were periodically "failing" on her (R: 39) but later explained that she was dismissed because her employer believed she was drinking alcohol on the job (R: 40) and that her falling did not begin until 2008 or 2009 (R: 45). Claimant also testified that she was not drinking alcohol in 2004 but rather a homeopathic remedy for her severe joint pain, although she later testified that the onset of her severe pain was in 2009, before which time she was "always active" (R: 58).

Patricia Sasona, a vocational expert, also appeared and testified at the hearing, regarding the available jobs for a sedentary, unskilled individual (R: 10, 71-76).

4

On December 6, 2012, the ALJ released his decision that Claimant is not disabled, finding, *inter alia*, that (R: 10-17):

> 3. The claimant has the following severe impairments: degenerative joint disease, obesity and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is precluded from using ladders, ropes or scaffolds; can occasionally balance or kneel; must avoid hazards such as heights and dangerous machinery; and is limited to understanding, remembering and carrying out simple instructions . . .
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Claimant now seeks review of the ALJ's decision. She contends that the ALJ's second and third steps were not supported by substantial evidence, because the ALJ did not combine Claimant's severe impairments and compare the joint effect of all of the impairments against the Commissioner's listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Namely, Claimant argues that although she was found to suffer obesity, this finding was not applied in the ALJ's reasoning. Claimant also seems to contend that the Commissioner did not carry her burden at the last step, because although there was evidence indicating the existence of non-exertional impairments, the ALJ relied exclusively on the Medical-Vocational Tables for sedentary work in finding that there exist jobs that Claimant can perform. See Claimant's Br. at 11-20.

Additional facts will be incorporated in the discussion below.

5

## III.   LEGAL STANDARD

### A.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

### B.   Determining Disability

Pursuant to the Social Security Act, in order to be eligible for benefits, a claimant must show that she is disabled by demonstrating an inability to "engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382a(3)(D).

### C. Sequential Evaluation Process

The SSA follows a five-step, sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the claimant has an impairment that limits her

ability to work. Id. Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work. Id. Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform. Id.

The evaluation continues through each step unless it is determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263 n. 2.

## IV.   DISCUSSION

For the reasons that follow, the ALJ's decision is affirmed in part, vacated in part, and remanded for further consideration consistent with this opinion. Because Claimant does not dispute the ALJ's decision at steps one and four, this opinion will not discuss those steps in detail below.

### A.   The ALJ's Consideration Of Claimant's Obesity On Her Other Impairments

At step two, an ALJ must determine whether a claimant's impairments are "severe." A severe impairment is an impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(e); contra 20 C.F.R. § 416.921(a); Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).

Here, the ALJ found that Claimant does have the following severe impairments: degenerative joint disease, obesity, and depression (R: 12). These findings are supported by substantial evidence (see, e.g., R: 186, 263, 291, 301). Because the ALJ found that Claimant has several severe impairments, the disability analysis proceeded to the third step.

At step three, an ALJ considers the medical evidence to determine whether the claimant's impairment meets or medically exceeds the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If the impairment is listed, this results in a presumption of disability.

Here, the ALJ found that although Claimant suffers from severe impairments of degenerative joint disease, obesity, and depression, these impairments do not meet the requirements of an impairment in the Listings. Specifically, the ALJ found that "[t]he medical evidence does not demonstrate the requisite degree of gross anatomical deformity, pain or limitations substantiated by diagnostic imaging, and resulting in an inability to perform fine and gross movements, under medical listing 1.02" for defining loss of function in the musculoskeletal system (R: 12-13).

To be disabling, an impairment must meet all the criteria of a listed impairment. Sullivan v. Zebley, 493 U.S. 521, 530 (1996). In defining functional loss in the musculoskeletal system, the Listings consider:

> [T]he inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment. The inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months. *For the purposes of these criteria, consideration of the ability to perform these activities must be from a physical standpoint alone.* When there is an inability

9

to perform these activities due to a mental impairment, the criteria in 12.00ff are to be used. *We will determine whether an individual can ambulate effectively or can perform fine and gross movements effectively based on the medical and other evidence in the case record*, generally without developing additional evidence about the individual's ability to perform the specific activities listed as examples in 1.00B2b(2) and 1.00B2c. 20 C.F.R. Part 404(A)(1)(B)(2)(a) (emphasis added).

Claimant, however, seems to argue that the ALJ failed to compare the combined effect of all of her impairments—particularly, the effect of her obesity on her knee joints—with one or more of the Commissioner's listings (R: 20), as required by 20 CFR 404.1526. That regulation mandates that if a claimant has:

> a combination of impairments, [none] of which meets a listing (see § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing. 20 CFR 404.1526.

Accordingly, Claimant argues that had the ALJ fully considered the effects of her obesity on her other severe impairments, this consideration would have mandated a finding of disability. See Claimant's Br. at 20-26.

The ALJ's decision considered the cumulative impact of Claimant's obesity on her degenerative joint disease. The ALJ noted that Claimant's "knees revealed moderate limitations in range of motion as well as tenderness" (R: 14) and stated that "[e]ven considering that claimant is 5'2" and weighs 220 pounds, there is no evidence permitting a conclusion that the combination of her orthopedic impairment and weight would not reduce her residual functional capacity below sedentary exertional level." (R: 15).

In Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009), the ALJ found obesity to be one of the claimant's severe impairments but did not take into consideration whether her

10

obesity combined with her asthma, diabetes, arthritis, back pain, and hypertension could impact her workplace performance. The Third Circuit remanded, as it was unable to conclude that the claimant's "obesity had no impact, alone or in combination with her other impairments, on her workplace performance." Id. at 504. Rather, the court noted that "morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense, if not medical diagnosis. See Clifford, 227 F.3d at 873 (noting significant relationship between obesity and severe arthritis of the knees)." Id.

By contrast, in Rutherford v. Barnhart, 399 F.3d 546, 546 (3d Cir. 2005), neither the claimant nor the ALJ mentioned obesity as a condition that contributed to the claimant's inability to work, notwithstanding that her height was 5'2" and weight was 245 pounds. In Rutherford, the claimant argued that the ALJ failed to consider her weight throughout the disability analysis, as required by Social Security Ruling ("SSR") 00–3p. Id. at 552. The Third Circuit concluded that remand was not required "because it would not affect the outcome of the case." Id. at 553. Significantly, the claimant did not specify how consideration of her obesity would affect the ALJ's five-step analysis, "beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers." Id.

Here, unlike in Rutherford, the ALJ determined that Claimant's obesity constituted a severe impairment. But, ultimately, this determination did not affect the outcome of the case, because the ALJ found that Claimant's RFC is at the sedentary exertional level.

During the hearing, Claimant testified that each time she visited the Emergency Room, doctors told her that she needed to lose weight to alleviate her knee pain (R: 56). The Aftercare Instructions from Jersey City Medical Center, following Claimant's September 2010 ER

11

admission, state that "weight loss and regular exercise including low-impact activities like . . . biking, or walking" can help reduce joint stress and explain that "[e]xercise actually is needed to nourish the joint cartilage and remove waste, and it helps keep the muscles around the joint strong" (R: 263). The medical record reveals that although Claimant's weight was noted in physicians' records (5'2' and 187-220 pounds [R: 41, 291]), no state agency physician discussed the correlation between her weight and her knee joint pain. Nor did Claimant specify any particular records or evidence relating to her obesity, which the ALJ purportedly omitted from his consideration. See Neff v. Astrue, 875 F. Supp. 2d 411, 423 (D. Del. 2012) (quoting Brown v. Astrue, 789 F.Supp.2d 470, 483-84).

Indicating consideration of Claimant's obesity, the ALJ noted that Claimant's "statements concerning the intensity, persistence and limiting effects of these [pain] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R: 15). He further noted that, "Even considering that claimant is 5'2" and weighs 220 pounds, there is no evidence permitting a conclusion that the combination of her orthopedic impairment and weight would not reduce her residual functional capacity below sedentary exertional level." Id. In other words, the ALJ determined that Claimant would still be able to perform at the sedentary exertional level that the examining physicians assessed as Claimant's RFC. "Because her doctors must also be viewed as aware of ["Claimant's"] obvious obesity," Rutherford, at 553, the Court finds that the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition. If the ALJ had instead independently assumed that Claimant's obesity had a significant detrimental effect on her RFC—such that Claimant could not function at a sedentary level—he would have been impermissibly substituting his opinion for that of the medical experts. See Neff

v. Astrue, 875 F. Supp. 2d 411, 423 (D. Del. 2012). Accordingly, consistent with the medical record and the physicians' assessments, the ALJ did properly take into consideration Claimant's obesity, and that portion of his decision is affirmed.

### B. The ALJ's Finding That Claimant Is Capable Of Other Work

Claimant argues that the Commissioner did not sustain her burden to show that jobs exist in the national economy that Claimant can perform despite her reduced RFC. See Claimant's Br. at 11. Specifically, Claimant contends that although the ALJ found that she suffers from a non-exertional impairment (R: 12-13), he failed to rely on the vocational expert's testimony and instead determined for himself how Claimant's non-exertional restrictions would affect her ability to perform sedentary work (R: 13). See Claimant's Br. at 8, 12-13. Claimant also contends that the ALJ improperly relied on the Medical-Vocational Guidelines in finding that there exists other work in significant numbers in the national economy which she can perform. See Claimant's Br. at 14-15.

In step three, the ALJ determined that Claimant "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is precluded from using ladders, ropes or scaffolds; can occasionally balance or kneel; must avoid hazards such as heights and dangerous machinery; and is limited to understanding, remembering and carrying out simple instructions." (R: 13). At step four, the ALJ determined that Claimant is not able to perform any of her past relevant work (R: 15). At step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." (R: 16).

The Medical–Vocational Guidelines only take account of exertional impairments.

Exertional impairments are those that affect the claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569(b). Non-exertional impairments are all other impairments that do not affect a claimant's ability to meet the strength demands of jobs. 20 C.F.R. § 404.1569(c)(1). As the Third Circuit noted in Sykes v. Apfel, 228 F.3d at 270 (emphasis added):

> When a claimant has an additional nonexertional impairment, the question whether that impairment diminishes his residual functional capacity is functionally the same as the question whether there are jobs in the national economy that he can perform given his combination of impairments. The grids do not purport to answer this question, and thus under [Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)] the practice of the ALJ determining without taking *additional evidence* the effect of the nonexertional impairment on residual functional capacity cannot stand.

Claimant complains that her psychiatric disturbance and pain interfere with her ability to concentrate and thus with her capacity to be productive in competitive employment. See Claimant's Br. at 19. She argues that under Sykes, the ALJ should have considered these non-exertional limitations in addition to the Guidelines. The ALJ seems to have adopted the findings of the state agency medical consultants who determined that Claimant's "activities of daily living are limited mostly by pain rather than psychiatric symptoms, and further noted either no limitations or, at best, moderate limitations in concentration and adaptation" (R: 15). Regarding Claimant's complaints of pain, her "statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (R: 15). Nevertheless, the ALJ determined that Claimant does not have the "cognitive functions . . . to perform past relevant work" as an accounts receivable clerk and receptionist (R: 15). However, the ALJ did not explicitly state that Claimant does not have any non-exertional limitations. Rather, the ALJ found that depression constitutes one of

14

Claimant's severe impairments (R: 12) and that she has "moderate difficulties" in concentration, persistence, and pace (R: 13). Although the ALJ did not reference the vocational expert's testimony, Ms. Sasona testified that the unskilled, sedentary jobs available to Claimant, as an addresser, patcher, and assembler, would require accuracy (R: 75) and would not allow daily, unscheduled breaks (R: 74). It is unclear whether the ALJ determined that Claimant has no non-exertional limitations that would otherwise erode her RFC and thus whether the ALJ properly relied solely on the Medical–Vocational Guidelines in finding that there exist jobs in significant numbers in the national economy that Claimant can perform.

## V.     CONCLUSION

For the foregoing reasons, the Court will affirm in part and vacate in part the ALJ's decision that there exist jobs in significant numbers in the national economy that Claimant can perform in conjunction with the Medical-Vocational Guidelines, and remands this case for further administrative proceedings consistent with this Opinion. An appropriate order accompanies this Opinion.

DATED: September 30, 2015

_____
**CLAIRE C. CECCHI, U.S.D.J.**